1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN QUINTERO,

                   Plaintiff,

    v.

CONNIE BISBEE, *et al.,*
                 Defendants.

3:16-cv-00673-MMD-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is Plaintiff's motion for leave to file a second amended complaint (ECF No. 21), which Defendants opposed (ECF Nos. 32, 33) and to which Plaintiff replied (ECF No. 36).  For the following reasons, the court recommends Plaintiff's motion to file a second amended complaint be granted, but that he be allowed to proceed on only Counts I, II and IV.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      John Quintero ("Plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").    Presently, Plaintiff is incarcerated at Warm Springs Correctional Center ("WSCC") in Carson City, Nevada.  On November 21, 2016, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1-1).  On January 24, 2017, Plaintiff filed a motion for leave to file a first amended complaint.  (ECF No. 3.) The court entered a screening order on the first amended complaint on November 14, 2017 (ECF No. 4), allowing Plaintiff to proceed on three counts, which allege violations of Plaintiff's Fourteenth Amendment right to procedural due process; state law rights against administrative overreach, which was allowed to proceed due to a finding of supplemental jurisdiction; and First Amendment right to the free exercise of religion.  (*Id.*)

On March 1, 2018, Plaintiff filed a motion for leave to file a second amended complaint ("SAC"). (ECF No. 21.) Defendants Adam Laxalt and Joseph Prieto filed a response requesting the court screen Plaintiff's proposed second amended complaint on March 22, 2018, and Plaintiff replied on March 26, 2018. (*See* ECF Nos. 25, 27.) The court decided to forego screening Plaintiff's second amended complaint and ordered that, should Defendants wish to oppose Plaintiff's motion, they file such an opposition with the court. (*See* ECF No. 28.) Defendants Connie Bisbee, Darla Foley, Ed Gray, Shawn Arruti, and James Wright filed their opposition on April 20, 2018. (ECF No. 32.) Defendants Adam Laxalt and Joseph Prieto joined on April 20, 2018. (ECF No. 33.) Plaintiff replied to the oppositions on April 27, 2018. (ECF No. 36.)

## II.    LEGAL STANDARD

### A. Amended Pleadings.

Courts in the Ninth Circuit "should liberally allow a party to amend its pleading." *Sonoma Cnty. Ass'n of Ret. Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing, *inter alia*, Fed. R. Civ. P. 15(a)). The court's "discretion to deny the motion is particularly broad where, as here, a [P]laintiff previously has been granted leave to amend." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999). Federal courts balance five factors when considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and, (5) whether the plaintiff has previously amended his complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). The factors do not weigh equally; as the Ninth Circuit has explained, prejudice receives greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).

When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature and its effect of requiring an

2

entirely new course of defense.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Alone, such alteration is not fatal.  *Id.*  In contrast, futility "alone can justify the denial of a motion for leave to amend."  *Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003).

Futility arises when the amendment is legally insufficient, *Miller v. Rykoff-Sexon, Inc.*, 845 F.3d 209, 214 (9th Cir. 1988), or "where the amended complaint would . . . be subject to dismissal[,]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).  When refusing to grant leave, the court must justify its reasoning.  *Leadsinger, Inc. v. BMG Music Publ'q*, 512 F.3d 522, 532 (9th Cir. 2008) ("An outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion.") (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).  Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.  *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

That being said, before discovery is complete, a proposed amendment is "futile" only if it is "clear … that the complaint could not be saved by any amendment."  *Frainski v. State of Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Ed.*, 616 F.3d 963, 972 (9th Cir. 2010). The court must determine if the complaint's "deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984 965 (9th Cir. 2011).

**B. Pleading Sufficiency.**

The Federal Rules of Civil Procedure require that pleadings, including amended complaints, provide "a short and plain statement" that shows the party is entitled to the relief sought.  Fed. R. Civ. P. 8(a)(2).  Although a complaint need not contain "detailed factual allegations," it must allege sufficient facts to state a claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim is plausible only where the court can reasonably infer the defendant is

liable for the misconduct alleged. *Id.* When reviewing for sufficiency, the court accepts factual allegations as true. *See id.* Nevertheless, the pleading must have basis in a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

The court must take particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The court is to "construe *pro se* filings liberally . . . and to 'afford the petitioner the benefit of any doubt.'" *Id.* Despite the leniency afforded to *pro se* plaintiffs, the complaint must allege facts sufficient to support each element of the claims, and the court need not accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

**III.   DISCUSSION**

Plaintiff moves to amend to cure alleged deficiencies in his first amended complaint, as well as remove some Defendants, add new Defendants, and add five additional counts. (ECF No. 21.) Defendants filed an opposition to Plaintiff's motion for leave to file a SAC. (ECF Nos. 32, 33.) Defendants oppose the addition of Counts IV, V, VI, VII, and VIII, arguing: the amendments are made in bad faith to circumvent the court's screening process, allowing them to proceed would prejudice the Defendants, and, they are futile. (ECF No. 32.) For the following reasons, the court recommends Plaintiff's motion to file a SAC be granted. However, as described below, the court recommends Plaintiff be allowed to proceed only on certain claims within the SAC.

**A.   Count I**

In Count I, Plaintiff alleges Defendants Wright, Foley, Gray, and Wood violated Plaintiff's First, Fifth, and Fourteenth Amendment rights by relying on *Stockmeier v. State*, 127 Nev. 243, 255 P.3d 209 (2011), when interpreting NRS 176.156. (ECF No.21 at 7-9.) Plaintiff alleges that by relying on *Stockmeier*, Defendants seek to avoid the plaint language requirement of NRS 176.156 as it applies to the provision of

1  administrative procedures post sentencing.

2      As the court did in the initial screening order, the court recommends that Plaintiff

3  be allowed to proceed on the count as a procedural due process challenge to the state's

4  parole system.  (ECF No.4 at 4-5.)

5      **B.    Count II**

6      In  Count  II,  Plaintiff  alleges  Defendant  Bisbee  created  an  administrative

7  regulation, NAC § 213.516, which exceeded her rulemaking authority granted by NRS §

8  209.341.  (ECF No.21 at 7.)  Plaintiff alleges that his Fourteenth Amendment rights have

9  been violated as a result.  (*Id.*)

10      As the court did in the initial screening order, the court recommends that Plaintiff

11  be allowed to proceed on this count as a pendant state law claim.  (ECF No. 4 at 6.)

12      **C.    Count III**

13      In Count III, Plaintiff alleges Defendants Tristan, Dzurenda, and John or Jane Doe

14  violated Plaintiff's rights under the First Amendment anti-establishment clause.  (ECF

15  No.21 at 11-14.)  Plaintiff alleges, by recognizing "CORE programs" that specifically

16  exclude religious activities under AR 801.01(2)(A), Defendants "seek the final end of

17  moral correction" and "the exclusive recognition of the latter [CORE activities and

18  evidence  based  programs]  for  purposes  of  parole  reports  and  [sic]  eligibility

19  determination[s]" in order to "discourage[sic] religious activities and encourage[sic]

20  medicalized behavioral models." (*Id.*)

21      Plaintiff attempts to allege a conspiracy claim.  "To state a claim for conspiracy to

22  violate one's constitution rights under section 1983, the plaintiff must state specific acts

23  to support the existence of the claimed conspiracy."  *Burns v. Cnty. of King*, 883 F.2d

24  819, 821 (9th Cir. 1989).  The Plaintiff must show "an agreement or meeting of the minds

25  to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy

26  need not know the exact details of the plan, but each participant must share at least the

27  common objective of the conspiracy."  *Crow v. Cnty. of San Diego*, 608 F.3d 406, 440

28  (9th Cir. 2010).  There are no facts in the SAC to support such a claim. As such, this

claims fails to meet the most liberal pleading standards and would be futile if it were allowed to proceed.

Therefore, the court recommends, the conspiracy claim be dismissed against Tristan and Dzurenda.

### D.    Count IV

In Count IV, Plaintiff alleges Defendants Prieto, Dzurenda, and John and/or Jane Does violated Plaintiff's First Amendment rights on religious grounds.  (ECF No. 21 at 15-16.)  Plaintiff alleges the "STOP" program for sex offenders requires public-shaming "as practiced in Puritan American by use of the stocks and 'scarlet letters.'"  (*Id.*)  This program is "repugnant" to Plaintiff's Catholic faith.  (*Id.*)

As the Court did in the initial screening order, the court recommends Plaintiff be allowed to proceed on the count on First Amendment religious grounds.  (ECF No. 4 at 8-9.)

### E.    Count V

In Count V, Plaintiff asserts that Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights by denying him the opportunity to correct his file and the purported inaccuracies within his pre-sentencing information report ("PSI").  (ECF No. 21 at 17-21.)   Additionally, Plaintiff further alleges due process violations resulting from the automatic use of the PSI information in the NDOC "secret data sheet" and the Parole Board reports.  (*Id.*)

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law."  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The guarantees of the Fourteenth Amendment apply only when a constitutionally protected life, liberty, or property interest is at stake.   *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003); *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998).  Prisoners have "no constitutional or inherent right" to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  While a state may create a liberty interest in parole, Nevada has

not.  *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *see also Fernandez v. Jackson*, 667 F.App'x 954 (9th Cir. 2016) ("Nevada law does not create a liberty interest in parole."); *Tribble v. Gibbons*, 415 F.App'x 828, 829 (9th Cir. 2011) ("The district court properly dismissed Tribble's Fourteenth Amendment due process claim because Nevada law does not create a liberty interest in parole.")

Substantive due process protects individuals from arbitrary and unreasonable government action which deprives any person of life, liberty, or property.  *Wolff*, 418 U.S. at 558; *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994).  To establish a substantive due process violation, the government's action must be shown to be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."  *Sinaloa Lake Owners v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (citation and quotation marks omitted).  Conduct that violates notions of substantive due process is said to be that which "shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing as examples, *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed.2d 448 (1957) (conduct that was so "brutal" and "offensive" that it did not "comport with traditional ideas of fair play and decency"); *Whitely v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (same); *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (same)).

"[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  *Lewis*, 523 U.S. at 848.  Instead, "[h]istorically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."  *Id.* at 849 (quoting from *Daniels v. Williams*, 474 U.S. at 331)).

The Ninth Circuit, in applying such limited procedural protection to the expectation of parole created by state statutes, has held that a parole determination procedure satisfied substantive due process when "some evidence supports the decision" of the parole board and "the evidence underlying the board's decision [has] some indicia of

reliability." *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (applying the "some evidence" standard set forth by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), to California parole scheme).

Plaintiff's claims do not involve a liberty interest entitling him to Fourteenth Amendment protections.  There is no right to parole in Nevada.  NRS 213.10705 provides that the grant of parole is an act of grace by the state, in which no liberty interest exists.  *See Severance v. Armstrong*, 96 Nev. 836, 839, 620 P.2d 369, 370 (Nev. 1980).  Due process at most, requires that "some evidence" supports the Commission's determination of Plaintiff's parole suitability.  To the extent Plaintiff is claiming the Commission violated his substantive due process rights because it considered insufficient or incorrect evidence, the record reflects there was "some evidence" to support the Commission's determinations.  The PSI is transmitted to NDOC specifically to determine inmate status, choose treatment programs, decide eligibility for privileges, and make parole decisions. Thus, it was appropriate for the Commission to consider the PSI.  *See Stockmeier v. State*, 127 Nev. 243, 249-51, 255 P.3d 209, 213-14 (2011).

As to the Plaintiff's claims he was denied the opportunity to correct inaccuracies within the PSI, the Division of Parole and Probation has no express authority to amend a prisoner's PSI after sentencing.  *See* NRS. 176.133-.159; NRS 213.1071-.1078' NRS 213.1092-.10988.  Additionally, the Division does not have any implied authority to amend a prisoner's PSI once he has been sentenced.  *Stockmeier*, 127 Nev. at 248-49 (citing *City of Henderson*, 122 Nev. At 335, 131 P.3d at 14).  If Plaintiff believed his PSI contained inaccuracies, he was required to raise that objection prior to sentencing. Plaintiff did not raise these concerns until the March 14, 2016 probation determination was issued, well past the time of his sentencing.  As such, Plaintiff cannot now contest the accuracy of the PSI nor can he hold the Offender Management Administrator, the NDOC Director, or the Attorney General liable in tort for failing to correct any perceived inaccuracies within the PSI.  Since Plaintiff does not have a protected liberty interest in

1  parole, the Parole Board's determination was supported by "some evidence," and
2  Plaintiff cannot now correct the PSI, the court recommends that this court be dismissed.

3       **F.    Count VI**

4       In Count VI, Plaintiff asserts Defendants Bisbee and Gray violated his Fourteenth
5  Amendment right by using a "increasingly more serious" aggravator resulting in the
6  denial of Plaintiff's parole.  (ECF No. 21 at 11.)  Even liberally construed, it is unclear
7  which Fourteenth Amendment protections Plaintiff is asserting.

8       In making his assertion Plaintiff relies on *Anselmo v. Bisbee*, 133 Nev. Adv. Op.
9  45, 396 P.3d 848 (2017), claiming that it should apply to him because he is serving an
10  "indeterminate (life) sentence."  (*Id.*)  *Anselmo* held that the aggravator should not be
11  used in cases involving life sentences, murder, or sexual assault convictions.  *See*
12  *Anselmo*, 396 P.3d at 852.  This court takes judicial notice that Plaintiff is serving a life
13  sentence.  Plaintiff was sentenced to a minimum of one-hundred and twenty (120)
14  months with no maximum time set, the language of the judgment imposes a life
15  sentence.  The court therefore recommends Plaintiff be allowed to pursue this count.

16       **G.    Count VII**

17       Count VII appears to allege interference with Plaintiff's right to access to the
18  courts, in violation of the First and Fourteenth Amendments.  (ECF No. 21 at 12.)
19  Construing the pleading liberally, the court will interpret this as a First, Fifth, and
20  Fourteenth Amendment claim.  Plaintiff avers Defendants Foley and an unnamed NDOC
21  Director unlawfully adopted a system that requires the inmate to directly request certain
22  information from the Parole Board rather than the law librarian.  (*Id.*)  Remarkably, Count
23  VII makes no suggestion that the system has interfered with Plaintiff's legal claims.

24       The right to access courts does not guarantee to prisoners a freestanding right to
25  a prison law library or other forms of legal assistance.  *Lewis v. Casey*, 518 U.S. 343,
26  345, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Canales-Robles v.* peters, 270
27  F.Supp.3d 1230, 1236 (9th Cir. 2017); *Hebbe v. Pliler*, 611 F.3d 1202, 1206 (9th Cir.
28  2010) (citation omitted).  Legal resources are merely "the means for ensuring 'a

reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis* 518 U.S. at 345 (quoting *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). The state may choose the means of access in order to satisfy this constitutional obligation. *Casey v. Lewis,* 43 F.3d 1261, 1266 (9th Cir. 1994) (citing to *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). A constitutional violation arises only where the means inadequately facilitate the constitutionally-protected end.

An inmate must show that a violation of his First Amendment right of access to the courts caused him actual injury. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

The court is mindful that it must "construe the pleadings liberally and . . . afford plaintiff the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Yet Plaintiff has failed to allege an actual injury as required by *Lewis*. While Plaintiff alleges generally that there are deficiencies in the system wherein the inmate must go to the Parole Board directly for the legal documents at issue that resulted in denial of access to courts. However, he fails to establish actual injury as a result of being denied access to the legal documents or because NDOC does not provide inmates access to legal assistance. (ECF No. 21 at 12.) Furthermore, the evidence in the record suggests that at least one NDOC employee, Buchanen, who is not named as a Defendant in this action, did provide the information to Plaintiff. (ECF No.21 at Ex. 7.) Thus, there is nothing from which the court can reasonably infer injury. Without injury, Plaintiff's allegations are a "threadbare recital [] of the elements of a cause of action . . ." *Iqbal*, 556 U.S. at 679. The claim is therefore subject to dismissal under Rule 12(b)(6) and is futile. *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998). Accordingly, the court recommends that Plaintiff be denied leave to pursue this count.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### H.    Count VIII

In Count VIII, Plaintiff alleges the Parole Commissioners violated Supreme Court law set forth in *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), by wrongfully considering the effects of crime on victims in making its decision.[1]    (ECF No.21 at 24.)    Plaintiff alleges that under *Winnebago* the government may only represent commonwealth and not private citizens, thus the Parole Board cannot consider victim-impact.  (*Id.*)

In *Winnebago*, a child's guardian ad litem brought an action pursuant to 42 U.S.C. § 1983 against the Winnebago County Department of Social Services and its various employees for failing to intervene to protect the child from his father despite numerous complaints of abuse.  *See Winnebago*, 489 U.S. at 191-94.  The Supreme Court determined that the Fourteenth Amendment did not require a state or local government agency to protect its citizens from private violence, so long as the state did not create the harm.  *Id.* at 194-98.  "The Due Process Clause of the Fourteenth Amendment is phrased as a limitation on a state's power to act, not as a guarantee of certain minimal levels of safety and security. . . its language cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means."  *Id.* at 195.

*Winnebago* does not support Plaintiff's claims. That case involved the limitations of the Fourteenth Amendment as it applies to a citizen's private life.  It did not refer to the consideration of victim-impact statements or information by a parole board in making parole determinations.   Additionally, the Nevada Legislature has expressly authorized the Parole Board to consider victim-impact.   *See* NRS 213.1099 ("In determining whether to release a prisoner on parole, the Board shall consider: . . . (e) [a]ny documents or testimony submitted by a victim [sic].")  The Parole Board has discretion to

---

[1]    Plaintiff never directly cited to *Deshaney v. Winnebago*, referring to the case simply as "Winnebago," the court has liberally construed this to refer to the aforementioned case.

1  consider a wide range of individualized factors in making parole decisions, including;

2  victim impact and impact on the community.  *Id.*  For the foregoing reasons, the court

3  determines that this count is futile and recommends it be dismissed.

4  **IV.   CONCLUSION**

5          The court has considered the motion and the parties' papers.  For good cause

6  appearing, the court recommends Plaintiff's motion for leave to amend (ECF No. 21) be

7  granted in part, and Plaintiff be allowed to proceed with Count I against Defendants

8  Wright, Foley, Gray, and Wood; Count II against Defendant Bisbee; Count IV against

9  Defendants Prieto, Dzurenda, and John and/or Jane Does; and Count VI against

10  Defendants Bisbee and Gray.  However, the court recommends the motion be denied in

11  part, and Count III against Defendants Dzurenda, and John and/or Jane Doe; Count V

12  against unclear Defendants[2]; Count VII against the Parole Board executive secretary,

13  and the prison law librarian; and Count VIII against the Parole Commissioners, of the

14  SAC not be permitted as futile.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir.

15  1995) (citation omitted).

16          The parties are advised:

17          1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

18  Practice, the parties may file specific written objections to this Report and

19  Recommendation within fourteen days of receipt.  These objections should be entitled

20  "Objections to Magistrate Judge's Report and Recommendation" and should be

21  accompanied by points and authorities for consideration by the District Court.

22          2.      This Report and Recommendation is not an appealable order and any

23  notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of

24  judgment.

25

26

27  _____

28  [2] Plaintiff does not specifically name any Defendants in this count, however, he refers to
the OMD Administrator, the NDOC Director, and the Attorney General.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion to amend (ECF No. 21) be **GRANTED IN PART AND, DENIED IN PART**;

**IT IS FURTHER RECOMMENDED** that the Clerk **FILE** the second amended complaint (ECF No. 21);

**IT IS FURTHER RECOMMENDED** that Count I against Defendants Wright, Foley, Gray, and Wood; Count II against Defendant Bisbee; Count IV against Defendants Prieto, Dzurenda and John and/or Jane Does; and Count VI against Defendants Bisbee and Gray, of the second amended complaint **PROCEED**; and

**IT IS FURTHER RECOMMENDED** that Count III against Defendants Dzurenda, and John and/or Jane Doe; Count V against unclear Defendants; Count VII against the Parole Board executive secretary, and the prison law librarian; and Count VIII against the Parole Commissioners, be **DISMISSED**.

**DATED**: October 10, 2018.

_____

**UNITED STATES MAGISTRATE JUDGE**