UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN QUINTERO,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CONNIE BISBEE, *et al.,*<br>　　　　　　　Defendants. | 3:16-cv-00673-MMD-CBC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff John Quintero ("Quintero") against Defendants Connie Bisbee, Dwayne Deal, Darla Foley, Ed Gray, Adam Laxalt, Joseph Prieto, James Wright, David Tristan, James Dzurenda, and Natalie Wood. Currently pending before the Court is a motion to dismiss filed by Defendants Bisbee, Foley, Gray, Wood and Wright (collectively referred to as "Defendants").[2]  (ECF No. 62.) Quintero opposed the motion, (ECF No. 67), and Defendants' replied.  (ECF No. 76.) Having thoroughly reviewed the record and papers, the Court hereby recommends Defendants' motion to dismiss be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Quintero's parole hearing while incarcerated in the Nevada Department of Corrections ("NDOC").  Quintero was convicted of lewdness with a minor pursuant to Nevada Revised Statute ("NRS") § 201.230 and sentenced to life with the possibility of parole after ten years.  (ECF No. 42 at 9.)

---

[1]   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   Shawn Arruti is also named as a party to the current pending motion.  (ECF No. 62.)  However, he was terminated from the case on February 7, 2019.  (ECF No. 55.) Additionally, Defendant Natalie Wood joined the motion to dismiss.  (ECF No. 113.)

Quintero's first parole hearing occurred on March 14, 2016. (ECF No. 21 at Ex. 1, pp. 31.) Under rules adopted by the Parole Board pursuant to NAC § 213.516 and NRS § 213.10855, Quintero was given a crime severity score of "highest," the most severe level, and a low risk of reoffense score. (*Id.* at 10.) He alleges the Parole Board used an overbroad matrix when categorizing his severity score and the creation of NAC § 213.516 exceeded Defendant Bisbee's rulemaking authority granted by NRS § 209.341. (*Id.*)

After categorization, his parole eligibility was then determined according to the guideline recommendations setting forth the factors to be considered. (*Id.*) In making their determination, the Parole Board considered the pre-sentence investigation report ("PSI") and Quintero's lack of participation in Core Programs or the "STOP" program for sex offenders. (*Id.* at 7-9; 11-14; 15-16.) Quintero alleges the PSI contained inaccurate information, which he was not given an opportunity to correct, in violation of his Fourteenth Amendment procedural and substantive due process rights. (*Id.* at 7-9, 17-21.) Additionally, Quintero alleges by giving more weight to the Core and STOP Programs than to his religiously based activities, Defendants Tristan, Dzurenda, and John and/or Jane Doe violated his First Amendment anti-establishment clause and religious rights. (*Id.* at 11-14, 15-16.)

Ultimately, the Parole Board denied Quintero parole citing to the fact the crime was targeted against a child, the impact on the victim and/or the community, and the increasingly serious nature of Quintero's criminal record. (*Id.* at Ex. 6, pp. 94.) Quintero alleges Defendants Bisbee and Gray violated his Fourteenth Amendment rights by relying upon the "increasingly more serious" aggravator in their denial of parole. (*Id.* at 22.) Therefore, Quintero contends he was unfairly denied parole.

Following screening, the Court permitted Quintero to proceed on Counts I-VI in the second amended complaint ("FAC") against Defendants. (ECF Nos. 42, 55.)

///

///

2

## II. LEGAL STANDARD

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6).  The ruling is a question of law.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). The court is to grant dismissal when the complaint fails to "state a claim for relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or fails to articulate a cognizable legal theory, *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). When analyzing a motion under Rule 12(b)(6), courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the complaint states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While detailed factual allegations are not necessary, the complaint must offer more than "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and include sufficient facts "to give fair notice and to enable the opposing party to defend itself effectively," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In conducting the dismissal analysis, the complaint is construed in a light most favorable to the plaintiff.  *Chubb Custom Ins. Co. v. Space Sys./Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).  Moreover, the court takes particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel.  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

## III. DISCUSSION

### A. *Heck* Bar

Defendants argue Quintero's claims are *Heck* barred to the extent he seeks damages related to his confinement.  (ECF No. 62 at 19.)

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 42 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus;

3

> requests for relief turning on circumstances of confinement may be presented in a § 1983 action.

*Muhammed v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citation omitted).

*Heck v. Humphrey*, 512 U.S. 477 (1994) is one of several cases in which the United States Supreme Court has addressed "the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions." *Skinner v. Switzer*, 562 U.S. 521, 533-534 (2011); *see also Presier v. Rodriguez*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammed* 540 U.S. 749. "Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement. Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983." *Skinner*, 562 U.S. at 525 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).

The Ninth Circuit has held a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement. *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1996). If the procedural defect complained of would, if established, necessarily imply the validity of confinement, the suit is barred. *Edwards*, 520 U.S. at 643.

Quintero "objects to and denies the applicability" of *Heck*. (ECF No. 67 at 6-7.) However, in each of Quintero's claims, he attacks the criterion and procedures used in the Parole Board's decision-making process. (ECF No. 21 at 7-22.) The criterion listed are the PSI report, the initial assessment procedure, participation in Core programs, and participation in the STOP program for sex offenders. (*Id.*) The relief sought by Quintero includes: (1) an injunction for a new parole hearing; (2) a declaration and injunction regarding NAC § 213.516, which provides for what the Parole Board should consider in their initial assessment; (3) the enjoining of NDOC to require inmate participation in the Parole Board report; (4) assorted declarations and injunctions related to each claim; and general, special, and punitive damages. (*Id.* at 27.) Clearly, if Quintero were to succeed on these claims and receive the relief requested, the result would be immediate or earlier

4

1  release from confinement. Thus, Quintero's remedy is habeas corpus, and Quintero has
2  not stated a claim under § 1983. Therefore, the Court recommends granting
3  Defendants' motion to dismiss. (ECF No. 62.)

4      **B.**    **Due Process**

5  Defendants argue Quintero cannot state a due process violation because he
6  cannot establish a protected liberty interest. (ECF No. 62 6-9, 12, 13.) Under the
7  Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property
8  without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41
9  L.Ed.2d 935 (1974); U.S. Const. amend. XIV, § 1. A due process analysis proceeds in
10 two steps. "The first asks whether there exists a liberty or property interest which has
11 been interfered with by the State; the second examines whether the procedures
12 attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. V.*
13 *Thompson*, 490 U.S. 454, 460 (1989).

14 "A liberty interest may arise from either of two sources: the due process clause
15 itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (quoting
16 *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986)). The guarantees of the
17 Fourteenth Amendment apply only when a constitutionally protected life, liberty, or
18 property interest is at stake. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003);
19 *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998). Prisoners have "no
20 constitutional or inherent right" to parole. *Greenholtz v. Inmates of Neb. Penal & Corr.*
21 *Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

22 Quintero argues the Defendants violated his Fourteenth Amendment due process
23 rights based on the practice and related procedures of conducting parole hearings
24 relying on PSI reports which the inmate cannot contest after sentencing. Moreover,
25 Quintero alleges the Defendants implemented a new parole board risk assessment
26 scheme, and the new scheme classified him as a highest risk to re-offend thus causing
27 the parole board to deny him parole. Because Quintero has no constitutional right to
28

1   parole, *Greenholtz*, 442 U.S. at 7, the Court must assess whether Quintero has a right
2   under state law.

3   While a state may create a liberty interest in parole, Nevada has not. *Swarthout
4   v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *see also
5   Fernandez v. Jackson*, 667 F.App'x 954 (9th Cir. 2016) ("Nevada law does not create a
6   liberty interest in parole."); *Tribble v. Gibbons*, 415 F.App'x 828, 829 (9th Cir. 2011)
7   ("The district court properly dismissed Tribble's Fourteenth Amendment due process
8   claim because Nevada law does not create a liberty interest in parole.") Accordingly,
9   Quintero is precluded from bringing a due process cause of action under either federal
10  or state law for his parole denial. Therefore, the Court recommends dismissing
11  Quintero's due process claims with prejudice.

12  **C.    Administrative Regulation**

13  Quintero claims Nevada's determination of whether to grant parole initial
14  assessment statute, NAC § 213.516 exceeds the rulemaking authority of Defendant
15  Bisbee granted by NRS § 209.341. (ECF No. 21 at 10.)

16  Despite Quintero's contentions, NRS § 209.341 is inapplicable. NRS § 209.341
17  governs the initial classification of inmates within the *prison system* and allows
18  assignment of inmates to the appropriate facilities based on that classification. *See* NRS
19  § 209.341(1)-(2). Rather, Defendant Bisbee has been granted the power to implement
20  NAC § 213.516 by NRS § 213.10855.

21  Pursuant to NRS § 213.10885, the Parole Board must promulgate detailed
22  standards to determine whether the release of an inmate on parole is appropriate.
23  These standards are codified in the Nevada Administrative Code. Under NAC §
24  213.512(1), the Parole Board must first assign "a severity level" to the crime for which
25  parole is being considered. The Parole Board must then assign "a risk level" using a
26  combination of risk factors that predict recidivism. NAC § 213.514(1)-(2). Based on
27  these scores, NAC § 213.516 provides an assessment regarding whether to grant
28  parole, deny parole, or consider the other aggravating and mitigating factors set forth in

6

NAC § 213.518.  Therefore, Defendant Bisbee was within her rulemaking authority and the Court recommends the motion to dismiss be granted.  (ECF No. 62.)

### D. Establishment Clause

The Establishment Clause of the First Amendment "means at least" that "[n]either a state nor the Federal Government . . . can force nor influence a person to go to or to remain from church against his will or force him to profess a belief or disbelief in any religion.  No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Board of Education of Ewing Township*, 330 U.S. 1, 15-16 (1947).  This core holding has consistently been emphasized by the Court.  "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise."  *Lee v. Weisman*, 505 U.S. 577, 587 (1992); *see also Zelman v. Simmons-Harris*, 536 U.S. 639, 653 (220) (emphasizing importance of the presence of "private choice" to avoid violations of the Establishment Clause).

A government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion.  *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also McCreary County v. ACLU*, 545 U.S. 844, 859 (2005); *Brown v. Woodland Joint Unified Sch. Dist.*, 27 F.3d 1373, 1378 (9th Cir. 1994).  Although *Lemon* is most frequently invoked in cases involving alleged governmental preferences to religion, the test also "accommodates the analysis of a claim brought under a hostility to religion theory." *Am. Family Ass'n., Inc.. v. City & County of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002); *see also Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994), *cert. denied*, 513 U.S. 1000 (1994) ("The government neutrality required under the Establishment Clause is . . . violated as much by government disapproval of religion as it is by government approval of religion.").

Quintero makes contradictory statements in his complaint (ECF No. 21 at 11-12) and does not address the claim in his response. (ECF No. 67.) He contends that "AR 801.04(2) states 'activities . . . will be included in Parole Report' but was not done in [his] 2016 Parole Report" (ECF No. 21 at 11), yet he also contends the Parole Board has a policy, under AR 801.01(2), of excluding all activities from the Parole Board's initial assessment. (*Id.*) Inmates bear the burden of showing prison policies "constitute a substantial burden on the exercise of [their] religious beliefs." *See Harry v. Perkins*, 735 Fed. App'x. 296, 297 (9th Cir. 2018); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Quintero has failed to demonstrate such a burden. Therefore, the Court recommends Defendants' motion to dismiss be granted. (ECF No. 62.)

### E. Quasi-Judicial Immunity

Parole board members are entitled to absolute immunity when they perform "quasi-judicial" functions. *Anderson v. Boyd*, 741 F.2d 906, 909-910 (9th Cir. 1983). Thus, Parole Board and DPS officials are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.), cert. denied, 454 U.S. 1102 (1981); *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991). Immunity extends to the preparing and submitting of presentence reports. *Ford v. Washington*, 19 Fed. Appx. 590, 2001 U.S. App. LEXIS 20836 (9th Cir. Or., 2001) (citing *Freeze v. Griffith, 849 F.2d*, 849 F.2d 172 (5th Cir. 1987)).

Quintero argues he is not challenging the Defendants' decision to deny him parole, but is instead challenging the fact Defendants: (1) repeatedly and intentionally misapplied their own internal guidelines by applying aggravating factors to him; (2) used an inaccurate PSI report in his assessment; (3) applied an overbroad initial assessment matrix; and, (4) did not consider his participation in activities. (ECF Nos. 21, 67.)

As the bodies charged with creating the PSI report, performing the initial assessment, setting the criteria for parolee evaluations, holding parole hearings, and deciding whether to grant, deny, or revoke Quintero's parole, Defendants perform a

1  quasi-judicial function. The alleged misapplications occurred during the parole board
2  hearing, and the alleged misapplications of law were used in making a decision to grant
3  or deny parole. Because Quintero's claims center on how the decisions were made at
4  his hearing, Defendants are entitled to quasi-judicial immunity. Therefore, the Court
5  recommends Defendants motion to dismiss be granted. (ECF No. 62.)[3]

### F. Qualified Immunity

Defendants argue they are entitled to qualified immunity. (ECF Nos. 62, 76.) Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Schroeder v. McDonald*, 41 F.3d 1272, 1279 (9th Cir. 1994) (internal quotation omitted); *see also Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). The doctrine applies even in cases where the defendant violated the plaintiff's constitutional rights, so long as the unlawfulness of the challenged action was not readily apparent. *Id.*; *Meyers v. Redwood City*, 400 F.3d 765, 770 (9th Cir. 2005). Therefore, to come within its protections, Defendants need only demonstrate: (1) the law governing their conduct was not clearly established at the time of the challenged actions; or, (2) under the clearly established law, they could reasonably have believed the alleged conduct was lawful. *See Katz v. United States*, 194 F.3d 962, 697 (9th Cir. 1999); *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct dos not violate clearly established statutory or constitutional rights of which a reasonable person should have known.").

As an initial matter, the Court must determine whether the alleged conduct actually violated a constitutional right. *Meyers*, 400 F.3d at 770. "If no constitutional right would have been violated were the allegations established, there is no necessity for

---

[3] Defendants raise several more arguments. However, since the Court has already found multiple grounds for granting Defendants' motion to dismiss (ECF No. 62), there is no need to address these additional arguments.

9

further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Quintero did not have a constitutional right. As discussed in Section A, there is no right to parole in Nevada. NRS § 213.10705 provides that the grant of parole is an act of grace by the state, in which no liberty interest exists. *See Severance v. Armstrong*, 96 Nev. 836, 839, 620 P.2d 369, 370 (Nev. 1980). Therefore, the Court recommends granting Defendants' motion to dismiss. (ECF No. 62.)

**IV.  OTHER PENDING MOTIONS**

In light of this Report and Recommendation, Quintero's motions for a temporary restraining order (ECF No. 47) and preliminary injunction (ECF No. 48) are moot, and the Court recommends they be denied on that basis.

Likewise, Quintero's motion requesting submission (ECF No. 58), motion to strike (ECF No. 66), motion seeking a protective order (ECF No. 74), motion for partial summary judgment (ECF No. 84), motion to extend time (ECF No. 86), and defendants' motion to stay discovery (ECF No. 64) are all moot, and the Court recommends they be denied on that basis.

Finally, the court recommends Quintero's motion to strike (ECF No. 81), and motion for leave to file supplemental evidence (ECF No. 98) be denied in light of this report and recommendation.

**V.  CONCLUSION**

Based upon the foregoing, the Court recommends Defendants motion to dismiss (ECF No. 62) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

      2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss (ECF No. 62) be **GRANTED** as to all claims against Defendants Bisbee, Foley, Gray, Wood and Wright.

**IT IS FURTHER RECOMMENDED** that the following motions be **DENIED:**

1. Plaintiff's motion to strike (ECF No. 81); and
2. Plaintiff's motion for leave to file supplemental evidence (ECF No. 98).

**IT IS FURTHER RECOMMENDED** that the following motions be **DENIED as moot:**

1. Plaintiff's motion for a temporary restraining order (ECF No. 47);
2. Plaintiff's motion for preliminary injunction (ECF No. 48);
3. Plaintiff's motion requesting submission (ECF No. 58);
4. Plaintiff's motion to strike (ECF No. 66);
5. Plaintiff's motion seeking a protective order (ECF No. 74);
6. Plaintiff's motion for partial summary judgment (ECF No. 84);
7. Plaintiff's motion to extend time (ECF No. 86);
8. Defendants' motion to stay discovery (ECF No. 64);

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: July 25, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**