UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN QUINTERO,<br><br>                Plaintiff,<br><br>v.<br><br><br>CONNIE BISBEE, *et al.,*<br>                Defendants. | 3:16-cv-00673-MMD-CBC<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff John Quintero ("Quintero") against Defendants Adam Laxalt, Joe Prieto, David Tristan, Dwayne Deal and James Dzurenda (collectively referred to as "Defendants").[2] Before the Court is Defendants' motion for summary judgment. (ECF No. 77.) Quintero opposed the motion, (ECF No. 85), and Defendants' replied. (ECF No. 96.) Having thoroughly reviewed the record and papers, the Court hereby recommends Defendants' motion for summary judgment be granted.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This case arises from Quintero's parole hearing while incarcerated in the Nevada Department of Corrections ("NDOC"). Quintero was convicted of lewdness with a minor pursuant to Nevada Revised Statute ("NRS") § 201.230 and sentenced to life with the possibility of parole after ten years. (ECF No. 42 at 9.)

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Defendants David Tristan, Dwayne Deal and James Dzurenda joined the motion for summary judgment. (ECF No. 112.)

Quintero's first parole hearing occurred on March 14, 2016. (ECF No. 21 at Ex. 1, pp. 31.) Under rules adopted by the Parole Board pursuant to NAC § 213.516 and NRS § 213.10855, Quintero was given a crime severity score of "highest," the most severe level, and a low risk of reoffense score. (*Id.* at 10.)

After categorization, his parole eligibility was then determined according to the guideline recommendations setting forth the factors to be considered. (*Id.*) In making their determination, the Parole Board considered the pre-sentence investigation report ("PSI") and Quintero's lack of participation in Core Programs or the "STOP" program for sex offenders. (*Id.* at 7-9; 11-14; 15-16.) The "STOP" program is specifically designed to rehabilitate sex offenders and requires they discuss their crimes in a group setting, which Quintero likens to public-shaming and a form of non-religious confession that goes against his Catholic faith. (*Id.*) Quintero alleges the PSI contained inaccurate information, which he was not given an opportunity to correct, in violation of his Fourteenth Amendment procedural and substantive due process rights. (*Id.* at 7-9, 17-21.) Additionally, Quintero alleges by giving more weight to the Core and STOP Programs than to his religiously based Activities, Defendants Tristan, Dzurenda, and John and/or Jane Doe violated his First Amendment anti-establishment clause and religious rights. (*Id.* at 11-14, 15-16.) Finally, Quintero alleges Defendants Prieto, Dzurenda, and John or Jane Doe violated his First Amendment right to freely exercise his religion because participation in the STOP program would violate his religious beliefs. (*Id.*)

Ultimately, the Parole Board denied Quintero parole citing to the fact the crime was targeted against a child, the impact on the victim and/or the community, and the increasingly serious nature of Quintero's criminal record. (*Id.* at Ex. 6, pp. 94.) Quintero contends he was unfairly denied parole.

Following screening, the Court permitted Quintero to proceed on Counts I-VI in the second amended complaint ("FAC") against Defendants. (ECF Nos. 42, 55.)

///

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences

arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

#### A. *Heck* Bar

Defendants argue Quintero's claims are *Heck* barred to the extent he seeks damages related to his confinement. (ECF No. 77 at 8-9.)

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 42 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus;

>requests for relief turning on circumstances of confinement may be presented in a § 1983 action.

*Muhammed v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citation omitted).

*Heck v. Humphrey*, 512 U.S. 477 (1994) is one of several cases in which the United States Supreme Court has addressed "the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions." *Skinner v. Switzer*, 562 U.S. 521, 533-534 (2011); *see also Presier v. Rodriguez*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammed* 540 U.S. 749. "Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement. Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983." *Skinner*, 562 U.S. at 525 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).

The Ninth Circuit has held a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement. *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1996). If the procedural defect complained of would, if established, necessarily imply the validity of confinement, the suit is barred. *Edwards*, 520 U.S. at 643.

Quintero denies the applicability of *Heck*, stating "[t]he issue in no way effects a challenge of the duration of [sic] the sentence impose[d]". (ECF No. 85 at 11-12.) However, in each of Quintero's claims, he attacks the criterion and procedures used in the Parole Board's decision-making process. (ECF No. 21 at 7-22.) The criterion listed are the PSI report, the initial assessment procedure, participation in Core programs, and participation in the STOP program for sex offenders. (*Id.*) The relief sought by Quintero includes: (1) an injunction for a new parole hearing; (2) a declaration and injunction regarding NAC § 213.516, which provides for what the Parole Board should consider in their initial assessment; (3) the enjoining of NDOC to require inmate participation in the Parole Board report; (4) assorted declarations and injunctions related to each claim; and general, special, and punitive damages. (*Id.* at 27.) Clearly, if Quintero were to succeed

1  on these claims and receive the relief requested, the result would be immediate or earlier
2  release from confinement. Thus, Quintero's remedy is habeas corpus, and Quintero has
3  not stated a claim under § 1983. Therefore, the Court recommends granting
4  Defendants' motion for summary judgment. (ECF No. 77.)

5  **B.  Due Process**

6  Defendants argue Quintero cannot state a due process violation because he
7  cannot establish a protected liberty interest. (ECF No. 77 12-14.) Under the Fourteenth
8  Amendment, prisoners "may not be deprived of life, liberty, or property without due
9  process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935
10 (1974); U.S. Const. amend. XIV, § 1. A due process analysis proceeds in two steps.
11 "The first asks whether there exists a liberty or property interest which has been
12 interfered with by the State; the second examines whether the procedures attendant
13 upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. V. Thompson*,
14 490 U.S. 454, 460 (1989).

15 "A liberty interest may arise from either of two sources: the due process clause
16 itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (quoting
17 *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986)). The guarantees of the
18 Fourteenth Amendment apply only when a constitutionally protected life, liberty, or
19 property interest is at stake. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003);
20 *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998). Prisoners have "no
21 constitutional or inherent right" to parole. *Greenholtz v. Inmates of Neb. Penal & Corr.*
22 *Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

23 Quintero argues the Defendants violated his Fourteenth Amendment due process
24 rights based on the practice and related procedures of conducting parole hearings
25 relying on PSI reports which the inmate cannot contest after sentencing. Moreover,
26 Quintero alleges Defendants implemented a new parole board risk assessment scheme,
27 and the new scheme classified him as a highest risk to re-offend thus causing the parole
28 board to deny him parole. Because Quintero has no constitutional right to parole,

6

1   *Greenholtz*, 442 U.S. at 7, the Court must assess whether Quintero has a right under
2   state law.

3   While a state may create a liberty interest in parole, Nevada has not.  *Swarthout*
4   *v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *see also*
5   *Fernandez v. Jackson*, 667 F.App'x 954 (9th Cir. 2016) ("Nevada law does not create a
6   liberty interest in parole."); *Tribble v. Gibbons*, 415 F.App'x 828, 829 (9th Cir. 2011)
7   ("The district court properly dismissed Tribble's Fourteenth Amendment due process
8   claim because Nevada law does not create a liberty interest in parole.")  Accordingly,
9   Quintero is precluded from bringing a due process cause of action under either federal
10  or state law for his parole denial.  Therefore, the Court recommends dismissing
11  Quintero's due process claims with prejudice and granting Defendants' motion for
12  summary judgment.  (ECF No. 77.)

13  **C.   Free Exercise Clause**

14  To implicate the Free Exercise Clause of the First Amendment, the plaintiff must
15  show a prison regulation substantially burdened a belief that is sincerely held and
16  religious in nature.  *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Malik v.*
17  *Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

18  To be a "substantial burden," the regulation must do more than simply
19  inconvenience one's exercise of religion.  *Int'l Church of Foursquare Gosepl v. City of*
20  *San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011).  A substantial burden exists where
21  the regulation exerts "substantial pressure on an adherent to modify his behavior and to
22  violate his beliefs."  *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. Of Sutter*, 456 F.3d
23  978, 988 (9th Cir. 2006) (quoting *Thomas v. Review Bd. Of the Indiana Emp't Sec. Div.*,
24  450 U.S. 707, 728 (1981)).

25  Once the plaintiff has shown a substantial burden of a sincerely held religious
26  belief, the court must determine whether the prison regulation or action was "reasonably
27  related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  If
28  so, it remains valid in light of the deference courts give to prison officials.  *Id.*  In

considering whether a restriction is reasonably related to legitimate penological interests, courts consider four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether alternative means of exercising the right remain open to inmates; (3) "the impact accommodation of the asserted constitutional right will have on guard and other inmates, and on the allocation of prison resources generally"; and, (4) whether "ready alternatives" to the challenged regulation exist. *Id.* at 89-90; *see also Pierce v. Cnty. Of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008).

Quintero asserts his participation in the STOP program would be "repugnant" to his Catholic faith. (ECF No. 21 at 15-16; *see also* ECF No. 85 at 18-21.) He alleges the "STOP" program for sex offenders requires public-shaming "as practiced in Puritan American by use of the stocks and 'scarlet letters.'" (*Id.*) His assertion is based on his interpretation of the ten commandments. (ECF No. 85 at Ex. 3.) In support of their assertion that participation in the STOP program does not substantially burden the exercise of Quintero's religion, Defendants submitted the full set of STOP program written materials, which do not require participants to profess or convert to any specific religion or religious beliefs. (ECF No. 77 at Exs. G, H, I, J.) Defendants also point out (ECF No. 96 at 5-6), and Quintero himself admits (ECF No. 85 at 19-20), participation in the STOP program is voluntary. Moreover, Quintero was not denied parole for his lack of participation in the STOP program (ECF No. 77 at Ex. C), therefore, he was not put into the position of having to either abandon his religious beliefs to participate in the STOP program or gain the benefit of parole. Therefore, Quintero has not shown his ability to freely exercise his religion has been substantially burdened.

Even if Quintero's ability to freely exercise his religion had been substantially burdened, the NDOC developed the STOP program to treat sex offenders. (ECF No. 84 at Exs. G, H, I, J.) The United States Supreme Court has instructed that there is an "undeniable" and "vital" interest in the rehabilitation of sex offenders. *McKune v. Lile*, 536 U.S. 24, 32-33, 48 (2002). Therefore, there is a valid rational connection between

8

the NDOC's STOP program and the legitimate penological interest in preventing recidivism. Therefore, the Defendants' motion for summary judgment should be granted. (ECF No. 77.)

### D.  Establishment Clause

The Establishment Clause of the First Amendment "means at least" that "[n]either a state nor the Federal Government . . . can force nor influence a person to go to or to remain from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Board of Education of Ewing Township*, 330 U.S. 1, 15-16 (1947). This core holding has consistently been emphasized by the Court. "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992); *see also Zelman v. Simmons-Harris*, 536 U.S. 639, 653 (220) (emphasizing importance of the presence of "private choice" to avoid violations of the Establishment Clause).

A government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also McCreary County v. ACLU*, 545 U.S. 844, 859 (2005); *Brown v. Woodland Joint Unified Sch. Dist.*, 27 F.3d 1373, 1378 (9th Cir. 1994). Although *Lemon* is most frequently invoked in cases involving alleged governmental preferences to religion, the test also "accommodates the analysis of a claim brought under a hostility to religion theory." *Am. Family Ass'n., Inc.. v. City & County of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002); *see also Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994), *cert. denied*, 513 U.S. 1000 (1994) ("The government neutrality required under the Establishment Clause is . . . violated as much by government disapproval of religion as it is by government approval of religion.").

Quintero makes contradictory statements in his complaint (ECF No. 21 at 11-12) and does not address the claim in his response. (ECF No. 85.) He contends that "AR 801.04(2) states 'activities . . . will be included in Parole Report' but was not done in [his] 2016 Parole Report" (ECF No. 21 at 11), yet he also contends the Parole Board has a policy, under AR 801.01(2), of excluding all activities from the Parole Board's initial assessment. (*Id.*) Inmates bear the burden of showing prison policies "constitute a substantial burden on the exercise of [their] religious beliefs." *See Harry v. Perkins*, 735 Fed. App'x. 296, 297 (9th Cir. 2018); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Quintero has failed to demonstrate such a burden. Therefore, the Court recommends Defendants motion for summary judgment be granted. (ECF No. 77.)

### E. Qualified Immunity

Defendants argue they are entitled to qualified immunity. (ECF Nos. 77, 96.) Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Schroeder v. McDonald*, 41 F.3d 1272, 1279 (9th Cir. 1994) (internal quotation omitted); *see also Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). The doctrine applies even in cases where the defendant violated the plaintiff's constitutional rights, so long as the unlawfulness of the challenged action was not readily apparent. *Id.*; *Meyers v. Redwood City*, 400 F.3d 765, 770 (9th Cir. 2005). Therefore, to come within its protections, Defendants need only demonstrate: (1) the law governing their conduct was not clearly established at the time of the challenged actions; or, (2) under the clearly established law, they could reasonably have believed the alleged conduct was lawful. *See Katz v. United States*, 194 F.3d 962, 697 (9th Cir. 1999); *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct dos not violate clearly established statutory or constitutional rights of which a reasonable person should have known.").

As an initial matter, the Court must determine whether the alleged conduct actually violated a constitutional right. *Meyers*, 400 F.3d at 770. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Quintero did not have a constitutional right. As discussed in Section A, there is no right to parole in Nevada. NRS § 213.10705 provides that the grant of parole is an act of grace by the state, in which no liberty interest exists. *See Severance v. Armstrong*, 96 Nev. 836, 839, 620 P.2d 369, 370 (Nev. 1980). Therefore, the Court recommends granting Defendants' motion for summary judgment. (ECF No.77.)[3]

**IV.   OTHER PENDING MOTIONS**

In light of this Report and Recommendation, it is recommended that Defendant Laxalt and Prieto's motions to extend time (ECF Nos. 89 & 90)[4] be granted *nunc pro tunc*.

**V.   CONCLUSION**

Based upon the foregoing, the Court recommends Defendants' motion for summary judgment (ECF No. 77) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[3] Although Defendants raise additional arguments, the Court need not address them as it has found sufficient bases for granting the motion for summary judgment. (ECF No. 77.)

[4] The motions to extend time (ECF Nos. 89 & 90) are duplicates.

11

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 77) be **GRANTED** as to all claims against Defendants Adam Laxalt, Joe Prieto, David Tristan, Dwayne Deal and James Dzurenda.

**IT IS FURTHER RECOMMENDED** that Defendant Laxalt and Prieto's motions to extend time (ECF Nos. 89 & 90)[5] be **GRANTED** *nunc pro tunc.*

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: July 25, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The motions to extend time (ECF Nos. 89 & 90) are duplicates.